Filing # 135164716 E-Filed 09/23/2021 11:32:23 AM

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR,
DUVAL COUNTY, FLORIDA

**CARLA LARIBEE and KEVIN
LARIBEE**

      **Plaintiffs,**                     **CASE NO.:**

**v.**                                          **DIVISION:**

**GYPSUM EXPRESS LTD.,
ROLLISON TUCKER HIGGS,
FCA US LLC d/b/a CHRYSLER
GROUP LLC, and
STELLANTIS N.V. f/k/a FIAT
CHRYSLER AUTOMOBILES N.V.
d/b/a FCA US LLC,**

      **Defendants.**
_____/

## COMPLAINT FOR DAMAGES

    **COME NOW** Plaintiffs Carla Laribee and Kevin Laribee, and hereby files this, their

Complaint for Damages against Defendants Gypsum Express LTD., Rollison Tucker Higgs,

FCA US LLC, and Stellantis N.V., and allege as follows:

### GENERAL ALLEGATIONS

**1.**

    This is an action for damages in excess of Thirty Thousand Dollars ($30,000.00)

exclusive of costs and interest.

**2.**

    Plaintiffs Carla Laribee and Kevin Laribee are residents of Bryceville, Nassau County,

Florida at all times material hereto.

**3.**

Defendant Gypsum Express LTD., (hereinafter "Defendant Gypsum" or "Gypsum") is subject to the jurisdiction and venue of this Court.  It is a foreign, for-profit corporation, incorporated under the laws of the State of New York. Defendant Gypsum's principal place of business is located at 8280 Sixty Road, Baldwinsville, Onondaga County, New York.  The business relates to the operation of an interstate trucking company for hire, and is part of the business for which it was organized.  Gypsum is not registered to do business in the State of Florida with the Florida Secretary of State, and Gypsum has no registered agent located in the State of Florida.  At all times material hereto, Defendant Gypsum was the owner of a 2017 International truck, VIN number 3HSDHSNR6HN642598, license plate number 2254919 and 2015 Fontaine trailer, VIN number 13N148200F1569871, license plate number P432010, being operated within the State of Florida by virtue of the privilege extended to nonresident owners by the State of Florida.  Accordingly, Gypsum is not a resident of the State of Florida but it may be served with Summons and Complaint pursuant to Florida Statutes, Section 48.171 and Section 48.161.

**4.**

Defendant Rollison Tucker Higgs (hereinafter "Defendant Higgs" or "Higgs"), is subject to the jurisdiction and venue of this Court.  Defendant Higgs is a citizen of Tattnall County, Georgia, with his residence located at 410 Sawmill Road, Collins, Tattnall County, Georgia.  On January 18, 2021, Defendant Higgs, was operating a 2017 International truck, VIN number 3HSDHSNR6HN642598, license plate number 2254919 and 2015 Fontaine trailer, VIN number 13N148200F1569871, license plate number P432010, within the State of Florida by virtue of his commercial driver's license issued by the State of Georgia.  At all times material hereto, Defendant Higgs was acting within the line and scope of duties as an employee of Defendant

2

Gypsum, and was operating a vehicle within the State of Florida by virtue of the privilege extended to nonresident operators by the State of Florida. Accordingly, Defendant Higgs is a nonresident of the State of Florida but may be served with Summons and Complaint pursuant to Florida Statutes, Section 48.171 and Section 48.161.

**5.**

Defendant, FCA US, LLC, d/b/a CHRYSLER GROUP LLC (hereinafter "Defendant Chrysler" or "Chrysler"), is subject to the jurisdiction and venue of this Court. It is a foreign, for-profit corporation, incorporated under the laws of the State of Delaware, with its principal place of business located at 1000 Chrysler Drive, Auburn Hills, Oakland County, Michigan. The business which is conducted at its office in Auburn Hills, Michigan relates to the designing, engineering, manufacturing, assembling and sales of new vehicles to the general public, including but not limited to the vehicle driven by Plaintiff on January 18, 2021. Chrysler is registered and licensed to do business in the State of Florida, with a registered agent located at 1200 South Pine Island Road, Plantation, Florida. Accordingly, Chrysler may be served with Summons and Complaint pursuant to Florida Statute Section 48.081. FCA US, LLC is a wholly owned subsidiary of Defendant Stellantis N.V.

**6.**

Prior to, during and after the incident involving Plaintiffs on January 18, 2021 Defendant Chrysler operated, conducted, engaged in and carried on a business or business venture in this state with an office or agencies in this state and committed a tortious act in Florida. At all material times, Chrysler caused injury to persons or property within this state arising out of any act or omission by the Defendant Chrysler outside this state while (i) Defendant Chrysler was engaged in solicitation or service activities within this state and while (ii) Defendant Chrysler's products, materials, or things processed, serviced or manufactured by Defendant Chrysler were

used or consumed within this state in the ordinary course of commerce, trade or use; and, while Chrysler was doing substantial and not isolated business in Florida.

**7.**

Defendant, Stellantis N.V. f/k/a Fiat Chrysler Automobiles N.V., d/b/a FCA US, LLC (hereinafter "Defendant Stellantis" or "Stellantis"), is subject to the jurisdiction and venue of this Court.  It is a foreign, for-profit corporation, incorporated under the laws of the Netherlands, with its principal place of business located at Lijnden, Singaporestraat 92, 1175 RA.   Stellantis is the parent company of Defendant Chrysler.  Stellantis is not registered or licensed to do business in the State of Florida with the Florida Secretary of State, and Stellantis has no registered agent located in the State of Florida.  Accordingly, Stellantis is not a resident of the State of Florida, or of the United States, but it may be served with Summons and Complaint pursuant to the rules outlined in the Hague Service Convention Article 5.

**8.**

On January 18, 2021, Plaintiff Carla Laribee was operating a 2015 Jeep Wrangler motor vehicle bearing vehicle identification number 1C4BJWFG7FL691015, designed, manufactured, assembled, and originally placed in the stream of commerce by Chrysler.

**9.**

Prior to April 30, 2015, Defendant FCA, LLC prepared, designed, researched, manufactured, assembled, and installed the occupant restraint and occupant safety systems, including but not limited to, the seats, recliner, cross shaft, seat-frame, seatbelt, and headrest, for the 2015 Jeep Wrangler driven by Plaintiff Carla Laribee.

**10.**

On April 30, 2015, Plaintiffs purchased the Jeep from an automobile dealer franchised by Defendant, FCA US, LLC.  Plaintiffs were the first and only registered owners of the Jeep and

4

the occupant restraint and occupant safety systems reached Plaintiffs without any substantial change in condition from the date of manufacture, assembly, and installation by Defendant FCA US, LLC.  At the time of purchase by Plaintiffs, the Jeep had not been previously purchased or titled to any other individual or entity.  From the date of purchase through January 18, 2021, Plaintiffs made no changes, alterations or modifications to the occupant restraint and occupant safety systems installed in the Jeep by Defendant, FCA US, LLC at the time of manufacture. At the time of the collision at issue, the occupant restraint and occupant safety systems were in substantially the same condition as when they were assembled, manufactured, and installed by Defendant Chrysler. This action was filed within the repose period found in Florida Statutes, Section 95.031(2)(b) as to the claims against Defendants Chrysler and Stellantis because the Jeep at issue was delivered to its first purchaser, Plaintiffs, on April 30, 2015.

**11.**

The motor vehicle collision that is the subject of this Complaint occurred in Jacksonville, Duval County, Florida on January 18, 2021.

**12.**

Venue is proper in Duval County, Florida, pursuant to Florida Statutes, Section 47.011, in that the cause of action set forth herein occurred in Duval County, Florida.

**13.**

On January 18, 2021, Defendant Higgs, was operating a 2017 International truck and 2015 Fontaine trailer heading south on Interstate 95 near State Road 102 (Airport Road) in Jacksonville, Duval County, Florida.  While traveling southbound on Interstate 95, Defendant Gypsum's agent driver, Defendant Higgs, was acting in the line and scope of his employment with Defendant Gypsum.  Defendant Gypsum owned the International truck and Fontaine trailer Defendant Higgs was operating.  As Defendant Higgs traveled south on Interstate 95 in the

center right lane, Plaintiff Carla Laribee was driving south on Interstate 95 in her 2015 Jeep Wrangler, VIN number 1C4BJWFG7FL691015, license number JXQS66, in the far-right lane. At the time of the subject incident, and at all times material hereto, Plaintiff Carla Laribee had her seatbelt properly secured.

## 14.

Defendant Higgs suddenly, and without warning, drove the truck and trailer he was operating into the right lane occupied by Plaintiff Carla Laribee, and contacted the rear left area of Plaintiff's Jeep Wrangler in the fashion of a PIT maneuver. As a result of Defendant Higgs impacting the Jeep Wrangler driven by Plaintiff, the Jeep was forced across the four lanes of the southbound Interstate 95 roadway before coming into contact with the barrier separating the roadway from northbound traffic. The force of the collision with the barrier caused Plaintiff's Jeep Wrangler to rotate, and Plaintiff Carla Laribee was completely ejected from the vehicle. Plaintiff Carla Laribee came to rest across the highway on the left shoulder of Interstate 95.

## 15.

As a result of the collision with Defendant Gypsum's truck, which was being driven by Defendant Higgs, Plaintiff Carla Laribee sustained catastrophic, debilitating, and permanent injuries to her brain, head, face, neck, spine, chest, arms, legs, back, torso and internal organs, and associated musculoskeletal structures, among other body parts.

## 16.

Plaintiff Carla Laribee's catastrophic and debilitating injuries were made significantly worse and enhanced because of the defective seat, recliner, cross-shaft, seat-frame, seatbelt, and headrest of the Jeep Wrangler designed, assembled, and manufactured by Defendant Chrysler. Upon impact caused by Defendant Gypsum's truck and trailer operated by Defendant Higgs, the occupant protection system, occupant restraint system, the seat, recliner, seat belt and their

component parts of Plaintiff Carla Laribee's Jeep Wrangler failed to withstand the force of the collision. As a result of the structural failure, and the failure of the seat belt pre-tensioners to operate properly, Plaintiff Carla Laribee's seat shifted, causing Plaintiff Carla Laribee to become dislodged from her secured position in her Jeep Wrangler.

**17.**

The truck and trailer owned by Defendant Gypsum, and operated by Defendant Higgs, was negligently driven in such a way as to cause it to collide with the vehicle driven by Plaintiff Carla Laribee, causing Plaintiffs' vehicle to be spun uncontrollably into a barrier and injuring the Plaintiff Carla Laribee, who, at all times relevant to this Complaint, was a seated and properly restrained driver. As a result, the negligently operated Gypsum truck, driven by Defendant Higgs, and the defective condition of the occupant restraint and occupant protection systems, the seat, recliner and seat belt of Plaintiffs' vehicle, caused significant physical impact and injury to Plaintiff Carla Laribee as follows:

    (a)    brain, head, face, neck, spine, chest, arms, pelvis, hips, legs, back, torso, neurological, internal organs and associated musculoskeletal structures;

    (b)    Plaintiff was and will continue to be severely and permanently physically injured;

    (c)    Plaintiff was caused to suffer permanent and chronic physical pain and will be caused to suffer physical damage in the future;

    (d)    Plaintiff was caused to suffer permanent and chronic mental anguish, anxiety, nightmares, dementia, memory loss, neurological disabilities and will be caused to suffer psychological damage in the future;

    (e)    Plaintiff was caused to lose wages and benefits and will continue to lose wages and benefits in the future;

(f)    Plaintiff was caused to spend reasonable and necessary monies for physicians and healthcare providers and will be caused to spend such sums in the future; and

(g)    Plaintiff was otherwise injured.

**18.**

All of the aforesaid injuries were foreseeably caused by the negligence of all named Defendants, their agents, parent agents, servants, representatives, and/or employees that were acting within the line and scope of their employment.

**COUNT I**
**(VICARIOUS LIABILITY – GYPSUM EXPRESS, LTD.)**

**19.**

Plaintiffs adopt and incorporate all General Allegations and the allegations contained in paragraphs 1 through 18 as if repeated herein.

**20.**

On January 18, 2021, Defendant Gypsum's agent driver, Defendant Higgs, was operating Defendant Gypsum's truck in the course and scope of his employment with Gypsum.  By reason of employment, and Defendant Higgs' failure to use reasonable care in the operation of the truck owned by Defendant Gypsum, Defendant Gypsum is vicariously liable for the actions of its driver.

**21.**

Defendant Gypsum, by and through its agent driver, was negligent in at least the following particulars:

(a)    Negligently operating a vehicle in violation of the following Florida Statutes promulgated for the safety of persons similarly situated to Plaintiffs:

    1.    Florida Statutes, Section 316.1925 (Careless driving);

    2.    Florida Statutes, Section 316.192 (Reckless driving);

    3.    Florida Statutes, Section 316.183(1) (Operating a vehicle on a highway at a speed greater than as reasonable and prudent under the conditions and having regards to the actual and potential hazards in existence);

    4.    Florida Statutes, Section 316.183(1) (Failing to control the speed of his vehicle as necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with the legal requirements of the duty of all persons to use due care);

    5.    Florida Statutes, Section 316.090(2) (No vehicle shall be driven over, across, or within any such dividing space, barrier, or section, except through an opening)

(b)    Operating a commercial vehicle in violation of multiple rules of regulations as promulgated by the Federal Motor Carrier Safety Administration and the Federal Motor Carrier Safety Regulations, including, but not limited to, 49 CFR Sections 395.3, 392.80, and 392.82;

(c)    Negligently failing to keep a proper and diligent lookout for traffic;

(d)    Negligently failing to slow or brake a tractor-trailer;

(e)    Negligently operating a semi-truck upon I-95 South in the presence of other vehicles and individuals; and

(f)    Defendant Gypsum's agent driver was otherwise negligent.

### 22.

The negligence of Defendant Gypsum's agent driver Higgs constitutes negligence *per se* as well as negligence in fact.

**23.**

The negligence and/or violation of Florida Statutes of Defendant Gypsum, by and through its agent, was the direct and proximate cause of the collision and the resulting injuries to Plaintiffs.  As a direct result of Defendant Gypsum's negligence, Plaintiff Carla Laribee was proximately caused to suffer and sustain bodily injury and resulting pain and suffering, disability, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of the ability to earn money in the future.  These losses are permanent and continuing, and Plaintiff Carla Laribee will suffer these losses in the future.  Accordingly, Plaintiff is entitled to an award of special damages for past and future medical expenses, medications, home health care, medical and nursing aid, life-care medical expenses, in an amount to be shown at trial and general damages all in an amount in excess of the threshold jurisdictional limits of this Court.

### COUNT II
### (DANGEROUS INSTRUMENTALITY – GYPSUM)

**24.**

Plaintiffs adopt and incorporate all General Allegations and the allegations of Count I as if repeated herein.

**25.**

Defendant Gypsum owned the subject International truck, a dangerous instrumentality, for its use and benefit.

**26.**

Defendant Higgs was operating the International truck with the permission of Defendant Gypsum in the course and scope of his employment with Defendant Gypsum.

**27.**

By reason of its control of a dangerous instrument through its officers, directors, and/or agents, Defendant Gypsum is liable for the operation of the dangerous instrumentality via its driver Defendant Higgs.

**COUNT III**
**(NEGLIGENT DRIVING – HIGGS)**

**28.**

Plaintiffs adopt and incorporate all General Allegations and the allegations of Counts I and II as if repeated herein.

**29.**

On January 18, 2021, Defendant Higgs was operating a 2017 International truck in the course and scope of his employment with Defendant Gypsum.  Defendant Higgs failed to use reasonable care in the operation of the truck. Defendant Higgs caused his Gypsum truck to strike Plaintiff Laribee's Jeep.

**30.**

Defendant Higgs was negligent in at least the following particulars:

(a) Negligently operating a vehicle in violation of the following Florida Statutes promulgated for the safety of persons similarly situated to Plaintiff(s):

1.    Florida Statutes, Section 316.1925 (Careless driving);

2.    Florida Statutes, Section 316.192 (Reckless driving);

3.    Florida Statutes, Section 316.183(1) (Failing to control the speed of his vehicle as necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with the legal requirements of the duty of all persons to use due care);

4.    Florida Statutes, Section 316.183(1) (Operating a vehicle on a highway at a speed greater than as reasonable and prudent under

the conditions and having regards to the actual and potential hazards in existence);

5.    Florida Statutes, Section 316.090(2) (No vehicle shall be driven over, across, or within any such dividing space, barrier, or section, except through an opening)

(b)    Operating a commercial vehicle in violation of multiple rules of regulations as promulgated by the Federal Motor Carrier Safety Administration and the Federal Motor Carrier Safety Regulations, including, but not limited to, 49 CFR Sections 395.3, 392.80, and 392.82;

(c)    Negligently failing to keep a proper and diligent lookout for traffic;

(d)    Negligently failing to slow or brake a tractor trailer;

(e)    Negligently operating a semi-truck upon I-95 south in the presence of other vehicles and individuals; and

(f)    Defendant Higgs was otherwise negligent.

## 31.

The negligence of Defendant Higgs constitutes negligence *per se* as well as negligence in fact.

## 32.

After the collision, Defendant Higgs failed to render reasonable assistance to Plaintiff Carla Laribee despite it being apparent that Plaintiff Carla Laribee was in need of medical treatment in violation of Florida Statutes, Section 316.062.

## 33.

The negligence and/or violation of Florida Statutes and/or Federal Regulations by Defendant Higgs was the direct and proximate cause of the collision and the resulting injuries to Plaintiffs.  As a direct result of Defendant Higgs' negligence, Plaintiff Carla Laribee was

proximately caused to suffer and sustain bodily injury and resulting pain and suffering, disability, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of the ability to earn money in the future. These losses are permanent and continuing, and Plaintiff Carla Laribee will suffer these losses in the future.  Accordingly, Plaintiff Carla Larbiee is entitled to an award of special damages for past and future medical expenses in an amount to be shown at trial and general damages all in an amount in excess of the threshold jurisdictional limits of this Court.

## COUNT IV
## (NEGLIGENCE – CHRYSLER)

**34.**

Plaintiffs adopt and incorporate all General Allegations and the allegations contained in paragraphs 1 through 18 as if repeated herein.

**35.**

At all times relevant to this action, Defendant Chrysler as the manufacturer of the Jeep, had a duty to design, inspect, test, manufacture, assemble, equip, distribute and sell the Jeep and its components so that it would provide a reasonable degree of occupant protection and safety during foreseeable motor vehicle collisions occurring in the real-world highway environment of its expected use.

**36.**

Defendant Chrysler designed the Jeep in such a manner as to create a danger which was unknown to potential purchasers or users of said vehicle, including Plaintiffs, under ordinary use and normal function of said vehicle.

**37.**

When Defendant Chrysler designed, inspected, tested, manufactured, assembled, marketed, advertised, distributed and sold the Jeep it knew or should have known that users of the Jeep would drive the Jeep on paved surfaces, including interstate highways, at highway speeds, that it was foreseeable that users of said vehicles would experience tire failures and/or emergency loss of control events that would cause the vehicle to behave erratically, and that such maneuvers would result in contact with fixed highway barricades, rollovers and upset conditions.

**38.**

Defendant Chrysler failed to reduce or avoid the foreseeable risks of harm by providing reasonable instructions or warnings about the defective conditions of the Jeep that it knew or should have known are involved in the reasonable foreseeable use of the Jeep.

**39.**

In designing, manufacturing, assembling, testing, inspecting and marketing the Jeep, Defendant Chrysler had a duty to use reasonable care to afford occupant protection to persons such as Plaintiff Carla Laribee who would be exposed to the hazard of rollover or upset conditions, but Defendant Chrysler negligently breached that duty in that, as designed, manufactured, assembled, tested, inspected and marketed, the Jeep was unreasonably dangerous in the following respects:

(a)     In failing to conduct those tests and studies necessary to determine that the Jeep's seat, recliner, cross shaft, seat-frame, seatbelt, and headrest did not satisfy minimum safety standards;

(b)     In failing to instruct or warn the Jeep community that the safety of the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest had not been established;

(c)     In failing to provide to the Jeep community adequate instructions for the safe use of the vehicle;

(d)     In failing to correct a known defect in the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest that caused the seat to shift and malfunction during the collision sequence;

(e)     In failing to warn of a known defect in the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest that caused the seat to shift and malfunction during the collision;

(f)     By improperly manufacturing and assembling a seat, recliner, cross shaft, seat-frame, seatbelt, and headrest that failed to operate as intended during foreseeable motor vehicle crashes;

(g)     By designing and manufacturing a seat, recliner, cross shaft, seat-frame, seatbelt and headrest that were not fit for their intended purpose;

(h)     The Jeep was designed, manufactured, assembled, tested, inspected and sold with a roof of inadequate and sufficient strength to protect occupants during foreseeable rollover or upset crashes;

(i)     The Jeep was designed, manufactured, assembled, tested, inspected, and sold with an occupant protection and occupant restraint system that was inadequate to prevent or minimize head impacts, bodily injuries and ejections of users during rollover or upset crashes;

(j)     The Jeep failed to include available technically and economically feasible vehicle stability systems such as electronic stability control (ESC), interactive vehicle dynamics (IVD), roll stability control (RSC) or similar stability or rollover and upset prevention technology that would have prevented the loss of stability and control and the resulting rollover or upset crash of the Jeep;

(k)     The restraint system of the Jeep failed to maintain its integrity during a reasonably foreseeable rollover or upset event which caused the seatback of Plaintiff Carla Laribee's seat to shift and move during the crash sequence;

(l)     The occupant protection system of the Jeep failed to maintain its integrity during a reasonably foreseeable rollover or upset event which caused the seatback of Plaintiff Carla Laribee's seat to shift and move during the crash sequence;

(m)     In failing to perform reasonably adequate testing on the Jeep prior to marketing it to the general public, including a failure to perform (i) testing of the occupant restraint system during foreseeable rollover or upset condition crashes, and (ii) testing concerning injuries caused by failure of the occupant restraint system to prevent ejections of occupants during rollovers or upset conditions;

(n)     In failing to perform reasonably adequate testing on the Jeep prior to marketing it to the general public, including a failure to perform (i) testing of the roof structure for adequate strength to protect occupants during foreseeable rollovers and upset conditions, and (ii) testing concerning

injuries caused by failure of the roof structure to prevent ejections of occupants during rollovers or upset conditions;

(o)     The Jeep did not contain adequate warnings to alert foreseeable users of the danger of injury created by the propensity of the occupant restraint system, including but not limited to the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest to fail to maintain its integrity during a rollover or upset event and the failure of the occupant restraint system, including but not limited to the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest to prevent ejection of occupants during rollovers or upset events;

(p)     In negligently warning or failing to warn Plaintiffs of defects in the Jeep which Defendant Chrysler either knew or should have known existed, and;

(q)     Defendant Chrysler marketed the Jeep as a go anywhere vehicle and failed to disclose or warn, both pre- and post-sale:

1.   That the occupant restraint system was inadequate to prevent or minimize head impacts, neck injuries and ejection during a rollover or upset condition;

2.   That the roof was not strong enough to protect occupants and/or prevent ejection in the event of a rollover or upset condition;

3.   That the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest would not maintain their integrity during a reasonably foreseeable rollover or upset event during a crash sequence;

4.   That the seat, recliner, cross shaft, seat-frame, seatbelt, headrest were not adequate to prevent ejection during a rollover or upset condition.

**40.**

The negligence of Defendant Chrysler was the direct and proximate cause of the collision and the resulting injuries to Plaintiffs.  As a direct result of Defendant Chrysler's negligence, Plaintiff Carla Laribee was proximately caused to suffer and sustain bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earning, and loss of the ability to earn money in the future.  These losses are permanent and continuing, and Plaintiff Carla Laribee will suffer these losses in the future.  Accordingly, Plaintiff Carla Laribee is entitled to an award of special damages for past and future medical expenses in an amount to be shown at

trial and general damages all in an amount in excess of the threshold jurisdictional limits of this Court.

**COUNT V**
**(STRICT LIABILITY – CHRYSLER)**

**41.**

Plaintiffs adopt and incorporate all General Allegations and the allegations of Count IV as if repeated herein.

**42.**

Defendant Chrysler designed, manufactured, assembled, supplied and placed the Jeep on the market in its defective condition, which caused and/or contributed to the injuries Plaintiff Carla Laribee received in the collision at issue.

**43.**

Plaintiff Carla Laribee is a foreseeable user that Defendant Chrysler should reasonably foresee as being subject to the harm caused by defectively designed, assembled and manufactured seat, recliner, cross shaft, seat frame, seatbelt and headrest insofar as Plaintiff Carla Laribee was the owner and operator of a 2015 Jeep Wrangler for whom the Chrysler seat, recliner, cross shaft, seat-frame, seatbelt, and headrest were intended to be used.

**44.**

On January 18, 2021 the Jeep involved in the collision at issue was in substantially the same condition as when it was originally sold to Plaintiffs.

**45.**

The Jeep designed, manufactured, constructed, and assembled by Defendant Chrysler, was defective at the time it left Chrysler's control due to the vehicle's propensity to roll over or upset during foreseeable emergencies and motor vehicle crashes, and lacked an adequate

occupant restraint system, seats and roof structure.  The defective conditions were known and present when the Jeep was placed in the stream of commerce by Chrysler.

**46.**

The Jeep was defective as marketed in that the advertising and marketing campaigns undertaken by Chrysler misled consumers as to the stability, occupant protection and restraint, and safety measures of the Jeep and failed to warn consumers of the dangerous conditions inherent in the design of the Jeep, including its seat, recliner, cross shaft, seat-frame, seatbelt, headrest, its propensity to rollover and/or upset and lack of crashworthiness.

**47.**

The Jeep was designed, assembled, and manufactured so that the defective conditions were undiscoverable until such time as the collision at issue occurred.

**48.**

The defective conditions of the Jeep were not observable by Plaintiffs Carla and Kevin Laribee, who, lacking technical knowledge and skill required to observe such dangerous conditions, relied upon Chrysler to design, manufacture, assemble, sell and deliver the vehicle in a condition fit for the purposes intended.

**49.**

At the time Defendant Chrysler released the 2015 Jeep into the stream of commerce, it knew or should have known that users of the Jeep would drive the Jeep on paved surfaces, including interstate highways, at highway speeds, that it was foreseeable that users of said vehicles would experience tire failures and/or emergency loss of control events that would cause the vehicle to behave erratically, and that such maneuvers would result in contact with fixed highway barricades, rollovers and upset conditions.

**50.**

Defendant Chrysler failed to reduce or avoid the foreseeable risks of harm by providing reasonable instructions or warnings about the defective conditions of the Jeep and the failure to provide those instructions or warnings made the Jeep unreasonably dangerous.

**51.**

Plaintiffs' damages were proximately caused at least whole or in part and/or contributed to by one or more of the following defects in the Jeep, all of which existed at the time the Jeep left the control of Defendant Chrysler, and all of which rendered the Jeep unreasonably dangerous for its intended and reasonably foreseeable uses:

(a) By improperly manufacturing and assembling a seat, recliner, cross shaft, seat-frame, seatbelt, and headrest that failed to operate as intended during foreseeable motor vehicle crashes;

(b) By designing and manufacturing a seat, recliner, cross shaft, seat-frame, seatbelt and headrest that were not fit for their intended purpose;

(c) The Jeep was designed, manufactured, assembled, tested, inspected and sold with a roof of inadequate and sufficient strength to protect occupants during foreseeable rollover or upset crashes;

(d) The Jeep was designed, manufactured, assembled, tested, inspected, and sold with an occupant protection and occupant restraint system that was inadequate to prevent or minimize head impacts, bodily injuries and ejections of users during rollover or upset crashes;

(e) The Jeep was defective in rollover and/or upset resistance design and performance;

(f) The restraint system of the Jeep failed to maintain its integrity during a reasonably foreseeable rollover or upset event which caused the seatback of Plaintiff Carla Laribee's seat to shift and move during the crash sequence;

(g) The occupant protection system of the Jeep failed to maintain its integrity during a reasonably foreseeable rollover or upset event which caused the seatback of Plaintiff Carla Laribee's seat to shift and move during the crash sequence;

(h) The Jeep did not contain adequate warnings to alert foreseeable users of the danger of injury created by the propensity of the occupant restraint system, including but not limited to the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest to fail to maintain its integrity during a rollover or upset event and the failure of the occupant restraint system, including but not limited to the seat,

recliner, cross shaft, seat-frame, seatbelt, and headrest to prevent ejection of occupants during rollovers or upset events;

(i) In failing to perform reasonably adequate testing on the Jeep prior to marketing it to the general public, including a failure to perform (i) testing of the occupant restraint system during foreseeable rollover or upset condition crashes, and (ii) testing concerning injuries caused by failure of the occupant restraint system to prevent ejections of occupants during rollovers or upset conditions;

(j) In failing to perform reasonably adequate testing on the Jeep prior to marketing it to the general public, including a failure to perform (i) testing of the roof structure for adequate strength to protect occupants during foreseeable rollovers and upset conditions, and (ii) testing concerning injuries caused by failure of the roof structure to prevent ejections of occupants during rollovers or upset conditions;

**52.**

As a direct and proximate cause of the Defendant's conduct Plaintiff Carla Laribee suffered extensive injuries and damages as outlined above, resulting in severe pain and discomfort, requiring several surgeries. Plaintiff Carla Laribee will also require future medical care, including physical therapy, medication, pain management, additional surgeries, and life care as she ages. In addition, Plaintiff Carla Laribee has suffered lost wages and lost earning capacity, mental distress and anguish and has suffered permanent impairment of the use and function of her affected upper extremities and was otherwise injured.  These losses are permanent and continuing, and Plaintiff Carla Laribee will suffer these losses in the future. Accordingly, Plaintiff Carla Laribee is entitled to an award of special damages for past and future medical expenses in an amount to be shown at trial and general damages all in an amount in excess of the threshold jurisdictional limits of this Court.

**COUNT VI**
**(NEGLIGENCE – STELLANTIS)**

**53.**

Plaintiffs adopt and incorporate all General Allegations and the allegations of Counts IV and V as if repeated herein.

**54.**

At all times relevant to this action, Defendant Chrysler was a wholly owned subsidiary of Defendant Stellantis f/k/a Fiat Chrysler Automobiles N.V.  Defendant Stellantis is responsible for the design, manufacture, and sale of the 2015 Jeep Wrangler that Plaintiff Carla Laribee was operating on January 18, 2021, in Jacksonville, Florida by virtue of its ownership and control of Defendant Chrysler.

**55.**

At all times relevant to this action, Defendant Stellantis as the manufacturer of the Jeep, had a duty to design, inspect, test, manufacture, assemble, equip, distribute, and sell the Jeep and ins components so that it would provide a reasonable degree of occupant protection and safety during foreseeable motor vehicle collisions occurring in the real-world highway environment of its expected use.

**56.**

Defendant Stellantis designed the Jeep in such a manner as to create a danger which was unknown to potential purchasers or users of said vehicle, including Plaintiffs, under ordinary use and normal function of said vehicle.

**57.**

When Defendant Stellantis designed, inspected, tested, manufactured, assembled, marketed, advertised, distributed and sold the Jeep it knew or should have known that users of the Jeep would drive the Jeep on paved surfaces, including interstate highways, at highway speeds, that it was foreseeable that users of said vehicles would experience tire failures and/or emergency loss of control events that would cause the vehicle to behave erratically, and that such maneuvers would result in contact with fixed highway barricades, rollovers and upset conditions.

**58.**

Defendant Stellantis failed to reduce or avoid the foreseeable risks of harm by providing reasonable instructions or warnings about the defective conditions of the Jeep that it knew or should have known are involved in the reasonably foreseeable use of the Jeep.

**59.**

In designing, manufacturing, assembling, testing, inspecting, and marketing the Jeep, Defendant Stellantis had a duty to use reasonable care to afford occupant protection to persons such as Plaintiff Carla Laribee who would be exposed to the hazard of rollover or upset conditions, but Defendant Stellantis negligently breached that duty in that, as designed, manufactured, assembled, tested, inspected, and marketed, the Jeep was unreasonably dangerous in the following respects:

(a) In failing to conduct those tests and studies necessary to determine that the Jeep's seat, recliner, cross shaft, seat-frame, seatbelt, and headrest did not satisfy minimum safety standards;

(b) In failing to instruct or warn the Jeep community that the safety of the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest had not been established;

(c) In failing to provide to the Jeep community adequate instructions for the safe use of the vehicle;

(d) In failing to correct a known defect in the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest that caused the seat to shift and malfunction during the collision sequence;

(e) In failing to warn of a known defect in the seat, recliner, cross shaft, seat- frame, seatbelt, and headrest that caused the seat to shift and malfunction during the collision;

(f) By improperly manufacturing and assembling a seat, recliner, cross shaft, seat-frame, seatbelt, and headrest that failed to operate as intended during foreseeable motor vehicle crashes;

(g) By designing and manufacturing a seat, recliner, cross shaft, seat-frame, seatbelt and headrest that were not fit for their intended purpose;

(h) The Jeep was designed, manufactured, assembled, tested, inspected and sold with a roof of inadequate and sufficient strength to protect occupants during foreseeable rollover or upset crashes;

(i) The Jeep was designed, manufactured, assembled, tested, inspected, and sold with an occupant protection and occupant restraint system that was inadequate to prevent or minimize head impacts, bodily injuries and ejections of users during rollover or upset crashes;

(j) The Jeep failed to include available technically and economically feasible vehicle stability systems such as electronic stability control (ESC), interactive vehicle dynamics (IVD), roll stability control (RSC) or similar stability or rollover and upset prevention technology that would have prevented the loss of stability and control and the resulting rollover or upset crash of the Jeep;

(k) The restraint system of the Jeep failed to maintain its integrity during a reasonably foreseeable rollover or upset event which caused the seatback of Plaintiff Carla Laribee's seat to shift and move during the crash sequence;

(l) The occupant protection system of the Jeep failed to maintain its integrity during a reasonably foreseeable rollover or upset event which caused the seatback of Plaintiff Carla Laribee's seat to shift and move during the crash sequence;

(m) In failing to perform reasonably adequate testing on the Jeep prior to marketing it to the general public, including a failure to perform (i) testing of the occupant restraint system during foreseeable rollover or upset condition crashes, and (ii) testing concerning injuries caused by failure of the occupant restraint system to prevent ejections of occupants during rollovers or upset conditions;

(n) In failing to perform reasonably adequate testing on the Jeep prior to marketing it to the general public, including a failure to perform (i) testing of the roof structure for adequate strength to protect occupants during foreseeable rollovers and upset conditions, and (ii) testing concerning injuries caused by failure of the roof structure to prevent ejections of occupants during rollovers or upset conditions;

(o) The Jeep did not contain adequate warnings to alert foreseeable users of the danger of injury created by the propensity of the occupant restraint system, including but not limited to the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest to fail to maintain its integrity during a rollover or upset event and the failure of the occupant restraint system, including but not limited to the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest to prevent ejection of occupants during rollovers or upset events;

(p) In negligently warning or failing to warn Plaintiffs of defects in the Jeep which Defendant Chrysler either knew or should have known existed, and;

(q) Defendant Chrysler marketed the Jeep as a go anywhere vehicle and failed to disclose or warn, both pre- and post-sale:

    1. That the occupant restraint system was inadequate to prevent or minimize head impacts, neck injuries and ejection during a rollover or upset condition;

    2. That the roof was not strong enough to protect occupants and/or prevent ejection in the event of a rollover or upset condition;

3.  That the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest would not maintain their integrity during a reasonably foreseeable rollover or upset event during a crash sequence;

4.  That the seat, recliner, cross shaft, seat-frame, seatbelt, headrest were not adequate to prevent ejection during a rollover or upset condition.

**60.**

Defendant Stellantis is liable to Plaintiffs pursuant to respondeat superior and agency principles. Defendant Stellantis' negligence was the direct and proximate cause of the resulting injuries to Plaintiffs. As a direct result of Defendant Stellantis' negligence, Plaintiff Carla Laribee was proximately caused to suffer and sustain bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earning, and loss of the ability to earn money in the future. These losses are permanent and continuing, and Plaintiff Carla Laribee will suffer these losses in the future. Accordingly, Plaintiff Carla Laribee is entitled to an award of special damages for past and future medical expenses in an amount to be shown at trial and general damages all in an amount in excess of the threshold jurisdictional limits of this Court.

## COUNT VII
### (STRICT LIABILITY – STELLANTIS)

**61.**

Plaintiffs adopt and incorporate all General Allegations and the allegations of Counts IV, V, and VI as if repeated herein.

**62.**

Defendant Stellantis by virtue of its ownership of Chrysler, designed, manufactured, assembled, supplied, and placed the Jeep on the market in its defective condition, which caused and/or contributed to the injuries Plaintiff Carla Laribee received in the collision at issue.

**63.**

Plaintiff Carla Laribee is a foreseeable user that Defendant Stellantis, by and through its legal predecessor Chrysler, should reasonably foresee as being subject to the harm caused by defectively designed, assembled, and manufactured seats, recliners, cross shafts, seat-frames, seatbelts, and headrests insofar as Plaintiff Carla Laribee was an owner and operator of a 2015 Jeep Wrangler for whom the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest were intended to be used.

**64.**

On January 18, 2021, the Jeep involved in the collision at issue was in substantially the same condition as when it was originally sold to Plaintiffs.

**65.**

Defendant Stellantis is a successor in interest to Defendant Chrysler.  The Jeep designed, manufactured, constructed, and assembled by Defendant Chrysler, was defective at the time it left Chrysler's control due to the vehicle's propensity to roll over or upset during foreseeable emergencies and motor vehicle crashes, and lacked an adequate occupant restraint system, seats and roof structure.  The defective conditions were known and present when the Jeep was placed in the stream of commerce by Chrysler, Defendant Stellantis' legal predecessor.

**66.**

The Jeep was defective as marketed in that the advertising and marketing campaigns undertaken by Chrysler misled consumers as to the stability, occupant protection and restraint, and safety measures of the Jeep and failed to warn consumers of the dangerous conditions inherent in the design of the Jeep, including its seat, recliner, cross shaft, seat-frame, seatbelt, headrest, its propensity to rollover and/or upset and lack of crashworthiness.

**67.**

The Jeep was designed, assembled, and manufactured so that the defective conditions were undiscoverable until such time as the collision at issue occurred.

**68.**

The defective conditions of the Jeep were not observable by Plaintiffs Carla and Kevin Laribee, who, lacking technical knowledge and skill required to observe such dangerous conditions, relied upon Chrysler the legal predecessor of Defendant Stellantis, to design, manufacture, assemble, sell and deliver the vehicle in a condition fit for the purposes intended.

**69.**

At the time Defendant Chrysler released the 2015 Jeep into the stream of commerce, it knew or should have known that users of the Jeep would drive the Jeep on paved surfaces, including interstate highways, at highway speeds, that it was foreseeable that users of said vehicles would experience tire failures and/or emergency loss of control events that would cause the vehicle to behave erratically, and that such maneuvers would result in contact with fixed highway barricades, rollovers and upset conditions.

**70.**

Defendant Stellantis, through its legal predecessor Defendant Chrysler failed to reduce or avoid the foreseeable risks of harm by providing reasonable instructions or warnings about the defective conditions of the Jeep and the failure to provide those instructions or warnings made the Jeep unreasonably dangerous.

**71.**

Plaintiffs' damages were proximately caused or contributed to by one or more of the following defects in the Jeep, all of which existed at the time the Jeep left the control of

Defendant Chrysler, and all of which rendered the Jeep unreasonably dangerous for its intended and reasonably foreseeable uses:

(a) By improperly manufacturing and assembling a seat, recliner, cross shaft, seat-frame, seatbelt, and headrest that failed to operate as intended during foreseeable motor vehicle crashes;

(b) By designing and manufacturing a seat, recliner, cross shaft, seat-frame, seatbelt and headrest that were not fit for their intended purpose;

(c) The Jeep was designed, manufactured, assembled, tested, inspected and sold with a roof of inadequate and sufficient strength to protect occupants during foreseeable rollover or upset crashes;

(d) The Jeep was designed, manufactured, assembled, tested, inspected, and sold with an occupant protection and occupant restraint system that was inadequate to prevent or minimize head impacts, bodily injuries and ejections of users during rollover or upset crashes;

(e) The Jeep was defective in rollover and/or upset resistance design and performance;

(f) The restraint system of the Jeep failed to maintain its integrity during a reasonably foreseeable rollover or upset event which caused the seatback of Plaintiff Carla Laribee's seat to shift and move during the crash sequence;

(g) The occupant protection system of the Jeep failed to maintain its integrity during a reasonably foreseeable rollover or upset event which caused the seatback of Plaintiff Carla Laribee's seat to shift and move during the crash sequence;

(h) The Jeep did not contain adequate warnings to alert foreseeable users of the danger of injury created by the propensity of the occupant restraint system, including but not limited to the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest to fail to maintain its integrity during a rollover or upset event and the failure of the occupant restraint system, including but not limited to the seat, recliner, cross shaft, seat-frame, seatbelt, and headrest to prevent ejection of occupants during rollovers or upset events;

(i) In failing to perform reasonably adequate testing on the Jeep prior to marketing it to the general public, including a failure to perform (i) testing of the occupant restraint system during foreseeable rollover or upset condition crashes, and (ii) testing concerning injuries caused by failure of the occupant restraint system to prevent ejections of occupants during rollovers or upset conditions;

(j) In failing to perform reasonably adequate testing on the Jeep prior to marketing it to the general public, including a failure to perform (i) testing of the roof structure for adequate strength to protect occupants during foreseeable rollovers and upset conditions, and (ii) testing concerning injuries caused by failure of the roof structure to prevent ejections of occupants during rollovers or upset conditions.

(k)

**72.**

Defendant Stellantis, as a successor in interest, placed 2015 Jeep Wranglers into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the vehicles.  As a successor in interest to Defendant Chrysler, Defendant Stellantis is responsible for Defendant Chrysler's violations.

**73.**

As a direct and proximate cause of the Defendant Stellantis's legal predecessor's conduct Plaintiff Carla Laribee suffered extensive injuries and damages as outlined above, resulting in severe pain and discomfort, requiring multiple surgeries. Plaintiff Carla Laribee will also require future medical care, including physical therapy, pain management, additional surgeries as she ages. In addition, Plaintiff has suffered lost wages and lost earning capacity, mental distress and anguish and has suffered permanent impairment of the use and function of her affected upper extremities and was otherwise injured. These losses are permanent and continuing, and Plaintiff will suffer these losses in the future.  Accordingly, Plaintiff Carla Laribee is entitled to an award of special damages for past and future medical expenses in an amount to be shown at trial and general damages all in an amount in excess of the threshold jurisdictional limits of this Court.

**COUNT VIII**
**(CONSORTIUM CLAIM—KEVIN LARIBEE)**

**74.**

Plaintiff Kevin Laribee adopts and incorporates all General Allegations and the allegations of Count I through Count VII, i.e. paragraphs 1-73 as if repeated herein.

**75.**

As a result of the negligence of all Defendants, Plaintiff Kevin Laribee as husband to Carla Laribee, was proximately caused to suffer injury and loss of consortium including loss of services, comfort, society, and attentions both past and future.

**WHEREFORE**, Plaintiffs, Carla Laribee and Kevin Laribee, pray **FOR A TRIAL BY JURY**, that Summons issue, that Judgment be entered in their favor against the Defendants, Gypsum Express LTD., Rollison Tucker Higgs, FCA US LLC, and Stellantis N.V., and that the following relief be granted:

> (a) Under Counts I and II, Plaintiff Carla Laribee be awarded her special damages in an amount to be proved a trial and that she be awarded general damages, pre-judgment interest as may be applicable and post-judgment interest against Defendant Gypsum;
>
> (b) Under Count III, Plaintiff Carla Laribee be awarded her special damages in an amount to be proved at trial, and that she be awarded general damages, pre-judgment interest as may be applicable and post-judgment interest against Defendant Higgs;
>
> (c) Under Count IV and V, Plaintiff Carla Laribee be awarded her special damages in an amount to be proved at trial, and that she be awarded general damages, pre-judgment interest as may be applicable and post-judgment interest against Defendant Chrysler;
>
> (d) Under Count VI and VII, Plaintiff Carla Laribee be awarded her special damages in an amount to be proved at trial, and that she be awarded

general damages, pre-judgment interest as may be applicable and post-judgment interest against Defendant Stellantis, as successor in interest;

(e)     Under Count VIII, Plaintiff Kevin Laribee be awarded his special damages in an amount to be proved at trial, and that he be awarded general damages, pre-judgment interest as may be applicable and post-judgment interest against all Defendants;

(f)     The costs of this action be taxed to Defendants; and

(g)     That Plaintiffs be awarded such other and further relief as the Court deems just and proper.

Dated this 24th day of September, 2021.

COOK, LEVERETT & UNDERWOOD, LLP


By: /s/ Robert R. Underwood II
ROBERT R. UNDERWOOD, II, ESQUIRE
Florida Bar No.: 0684971
4600 Touchton Road, East, Suite 1150
Jacksonville, Florida 32246
Telephone: (877) 465-1350
*Attorney for Plaintiff*


COOK, LEVERETT & UNDERWOOD, LLP


EDWARD S. COOK, ESQUIRE
Georgia Bar No.: 18371
(Pro Hac Vice Forthcoming)
LINDSEY RODGERS, ESQUIRE
Georgia Bar No.: 278885
(Pro Hac Vice Forthcoming)
970 Peachtree Industrial Boulevard
Suite 202
Suwanee, GA 30024
Telephone: (404) 841-8485
Facsimile: (678) 541-5408
*Attorneys for Plaintiff*